JASON M. FRIERSON
United States Attorney
Nevada Bar No. 7709
District of Nevada
JACOB H. OPERSKALSKI
Assistant United States Attorney
Nevada Bar Number 14746
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
PHONE: (702) 388-6336
jacob.operskalski@usdoj.gov
*Attorneys for United States of America*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:23-cr-00221-JAD-DJA |
| Plaintiff, | |
| v. | **Government's Response to John Anthony Miller's Motion for Review of Detention Order** |
| JOHN ANTHONY MILLER, | |
| Defendant. | |

**CERTIFICATION: The undersigned counsel certifies that this responsive memorandum is timely filed**.

The United States, by and through the undersigned, hereby responds to John Anthony Miller's Motion for Review of Magistrate Judge's Detention Order, ECF No. 23.

### I.      Factual and Procedural Background

During the time period from October 11 to October 25, 2023, John Anthony Miller ("Miller") left a barrage of violent, threatening voicemails at offices for two United States Senators (U.S. Senators 1 and 2). Miller's words and actions escalated over that short period of time as he detailed, in vile, dehumanizing language, the precise nature of his violent intentions.

On October 17, Miller made the following statements in voicemails left for U.S.

Senator 1:

- "You just fucking woken up a motherfucking monster, you fucking piece of shit un-human, subhuman, you're vermin, bitch, you are vermin, bitch, and **we're gonna finish what Hitler started you fucking slut**."(emphasis added).

- "You done picked your side bitch and you done chose evil. I don't give a fuck if you were born into it or not, bitch, you are fucking evil, bitch and **we're gonna exterminate you, fuck**." (emphasis added).

One day after stating his desire to "finish what Hitler started" and to "exterminate" his victim who he sees as "subhuman" "vermin," Miller appeared at the Lloyd D. George Courthouse (where both United States Senators for the State of Nevada have offices) and stated his intention to see U.S. Senator 1. *See* ECF No. 4 at 4. Miller was refused entry after he refused to fully comply with a Court Security Officer, and Miller proceeded to yell, among other things: "To kill every last Israeli terror-fucking-rist" while walking down Las Vegas Boulevard. *See id.*

Miller was undeterred by his refusal at the Courthouse; instead, he escalated further, turning his threats to the family of United States Senators. On October 24, following another violent rant in a voicemail left for U.S. Senator 1, Miller stated: "Why don't you come arrest me then, fuckin bitch, fuckin bitch, your family's not safe no more, bitch. You just put your whole fuckin family in danger, bitch, you better fly them out there to fuckin Israel too."

During the same time period, Miller left a torrent of threatening voicemails with the offices of U.S. Senator 2. Specifically, in the early morning hours of October 25, Miller left a voicemail threatening the family of U.S. Senator 2.

On October 25, 2023, Miller was charged by Criminal Complaint with one count of 18 U.S.C. § 115(a)(1)(B) Threatening a Federal Official, and an Arrest Warrant was issued

1   the same day. ECF No. 1. On October 27, an Amended Criminal Complaint was filed

2   against Miller for the same charge. ECF No. 4.

3          On October 27, 2023, Miller had his initial appearance on the Amended Criminal

4   Complaint and a detention hearing. ECF No. 5. Prior to the hearing, at 12:50 p.m., Pretrial

5   Services issued a Pretrial Services Report that was void of any input from the government

6   beyond what was contained in charging documents – the report recommended release.[1] At

7   1:35 p.m., after the Court had an opportunity to review proposed release conditions,

8   Pretrial Services issued a revised Pretrial Services Report, which contained an additional

9   condition requested by the Court. At the hearing, the Court heard argument from the

10  parties, and in a subsequent written order, determined:

11         Based on the allegations set forth in the Complaint, information set forth in
           the government's proffer, as well as the information provided to the Court by
12         Pretrial Services, the Court finds Defendant poses a substantial risk of
           nonappearance and a danger to the community. There is clear and
13         convincing evidence that there are no conditions or combination of
           conditions the Court could fashion at this time to reasonably assure
14         Defendant's future appearance in court or the safety of persons or the
           community against the risk of danger posed by Defendant. The Court
15         therefore orders Defendant detained pending trial.[2]

16  ECF No. 15 at 3.

17         A preliminary hearing was held on November 9, 2023 – the Court heard testimony

18  from co-case agent, Las Vegas Metropolitan Police Detective and Joint Terrorism Task

19

20  ─────────────────────

[1] After the initial report was sent to counsel, undersigned counsel inquired if the report had
21  already been issued to the Court or if the government could provide information. Pretrial
    Services has recently changed the long-standing practice of contacting the U.S. Attorney's
22  Office for information that bears on detention, so the report was disclosed to the Court
    without any background from the Government beyond that contained in the charging
23  documents.
[2] The Court orally ruled that there was no basis to conclude that Miller would be likely to
24  flee, that any risk of nonappearance could be mitigated with release conditions, but that the
    danger Miller poses was the Court's concern. *See* Defense Exhibit A at 16:41-17:24.

1 Force Officer Kenneth Mead.[3] The magistrate court found probable cause and remanded

2 Miller to custody. ECF No. 21. On November 21, a Federal Grand Jury returned an

3 Indictment charging Miller with one count of Threatening a Federal official in violation of

4 18 U.S.C. § 115(a)(1)(B), and two counts of Influencing, impeding, or retaliating against a

5 Federal official by threatening a family member in violation of 18 U.S.C. § 115(a)(1)(A) for

6 his actions in threatening U.S. Senator 1, the family of U.S. Senator 1, and the family of U.S.

7 Senator 2.

8       The United States hereby responds to Miller's motion for review of the detention

9 order previously entered by the Honorable Magistrate Judge Elayna J. Youchah, ECF No.

10 23.

11   **II.       Standard of Review and the Bail Reform Act**

12       Under 18 U.S.C. § 3145(b), the court with original jurisdiction over the charged

13 offense has the jurisdiction to review a detention order. The reviewing court reviews a

14 magistrate judge's order of detention de novo. *See United States v. Koenig*, 912 F.2d 1190,

15 1192-93 (9th Cir. 1990). While "[t]he district court is not required to start over in every

16 case, and proceed as if the magistrate's decision and findings did not exist," the district

17 court "should review the evidence before the magistrate and make its own independent

18 determination whether the magistrate's findings are correct, with no deference." *Id.*

19       The Bail Reform Act requires the least restrictive conditions possible to assure the

20 defendant's appearance and the safety of the community. *See* 18 U.S.C. § 3142(c)(1)(B).  If

21 there is no condition or combination of conditions that will reasonably assure the

22

23   [3] Miller claimed that the witness "conceded" that the victim did not respond "as if she feared
    [Miller] would harm her." ECF No. 23 at 4. The witness made no such concession. Miller's
24   distortion relies on the mistaken premise that fear and concern can only be displayed by a
    complete inability to continue working and living.

1  appearance of the defendant and the safety of any other person and the community, the

2  defendant shall be detained pending trial. *See* 18 U.S.C. § 3142(e).

3      To determine whether conditions would reasonably assure the defendant's

4  appearance and the safety of any other person and community, § 3142(g) provides four

5  factors to consider: (1) the nature and circumstances of the offense charged; (2) the weight

6  of the evidence against the defendant; (3) the history and characteristics of the defendant;

7  and (4) the nature and seriousness of the danger to any person or the community that

8  would be posed by defendant's release. For a defendant's risk of flight, the government

9  must prove by a preponderance of the evidence that the defendant will not appear as

10  required. *United States v. Motamedi*, 767 F.2d 1403, 1406-07 (9th Cir. 1985). As for a

11  defendant's danger to any person or the community, the government must show by clear

12  and convincing evidence that no pretrial conditions could reasonably assure the public's

13  safety. *Id.*

14      **III.    Argument**

15          **A. Seriousness of the Charged Offenses and the Weight of the Evidence**

16      Miller told his victims exactly what he intended to do had he not been apprehended

17  and placed in custody. Any case involving true threats to assault, kidnap, or murder federal

18  officials and their families with the intent of influencing, impeding, or retaliating against a

19  federal official should invoke a concern for the danger the defendant poses, but this case is

20  especially disturbing. 18 U.S.C. § 3142 requires that the Court consider not only the statute

21  with which the defendant is charged with violating, but to also consider the *nature and*

22  *circumstances* of the particular offense. That is precisely what the magistrate court did here

23  when describing the allegations against Miller as "disturbing," "scary," and "frightening."

24  Defense Exhibit A at 14:36 to 14:43.

1    Miller did not make generic threatening comments, but instead, in the wake of the

2    recent violence in the Gaza strip, Miller invoked words reminiscent of the Holocaust as he

3    stated his desire to "exterminate" U.S. Senator 1, seeing her as "subhuman" and "vermin."

4    Although words alone (in the form of true threats) violate the charged statutes, Miller did

5    not stop there. He appeared at the Federal Courthouse in Las Vegas where United States

6    Senators have offices and stated his intent to see one of his victims, one day after stating his

7    desire to exterminate her.

8    Although the weight of the evidence is the least persuasive factor pertaining to

9    pretrial detention, the overwhelming evidence should be considered in conjunction with the

10   seriousness of the offense to demonstrate that there is no reasonable doubt that Miller was

11   the man who left the repeated violent messages for U.S. Senators stating his plan for

12   violence. Miller left a number of threatening messages to U.S. Senator 1 from a phone

13   number that Miller has repeatedly identified as his own, including in prior 911 calls and

14   even in one of the threatening messages.[4] Subscriber records obtained by the Federal

15   Bureau of Investigation ("FBI") show "John Miller" as the subscriber for that number.

16   Miller's voice and speech pattern are near identical in all the threatening messages and

17   match his post-*Miranda* statement.

18   Additionally, the FBI seized Miller's cellular phone upon his arrest and obtained a

19   search warrant to search its contents. Miller sent the following messages (transcribed by an

20   FBI agent):

21   • October 17:
     "Sorry
22   I just know I'm gonna either die or go to prison here pretty soon
     I can't stop crying or leaving messages on they voicemails
23

---

24   [4] In one voicemail left at an office for U.S. Senator 1 on October 19, Miller identified himself
     by name and number before launching into another rant.

6

They gone too far"

- October 23:
"They didn't arrest me today
Looks like I'm gonna have to step it up tomorrow
I ain't gonna stop maymay
I hope I make you proud of me"

- October 24:
"My MayMay
It's hard motherfucking work threatening these pieces of shits war pigs subhuman
senators and congresswomen so now I leave messages mentioning their family
members now and how much I would LOVE to meet and greet them and lucky for us
you posted pictures of them online so we can never forget their faces
If that don't do it Maymay I suppose we'll try something a lil stronger tomorrow
I love you so much and I hope at least you will be proud of me"

Miller's text messages clearly contain admissions pertaining to the charged conduct and

evincing his plan to act in way that he believed would result in his death or imprisonment.

All true threats should be taken seriously. When, as here, a defendant shares his violent

intentions in public and in private, the government submits that his words should not be

dismissed as empty rhetorical posturing.

As affirmed by the Honorable Judge Elayna J. Youchah's oral findings, Miller's

alleged conduct is especially egregious – he poses a unique danger to the community and to

the victims in this case.

**B.  The history and characteristics of the defendant**

The government's primary concern in this case is the danger Miller poses to the

victims and to the community – however, he also poses a risk of nonappearance.[5] Miller

lacks ties to this community, lacks any family network in Las Vegas, and he does not have

---

[5] The government raised the risk of nonappearance before the magistrate court. As this Court
is conducting a de novo review, detention may be affirmed on this basis as well.

1  stable employment.[6] In light of his text messages stating his plan to act in ways that would

2  result in him dying or incarcerated, the government submits that he should not be trusted to

3  appear as required for court hearings.

4      Although Miller does not have a *documented* history of violence – his rabid

5  antisemitism, combined with his obsession with the conflict in Gaza and hatred for Israel,

6  has triggered Miller on an escalating pathway to violence. He started with threats to U.S.

7  Senator 1, tried to see her in person, escalated his language to threats to families of both

8  U.S. Senators 1 and 2, hurling vile, frightening threats aimed at his victims. Even faced

9  with a Deputy United States Marshal outside the U.S. District Courthouse, Miller yelled

10  about killing Israelis. His hatred knows no bounds. Left to his own devices and out of

11  custody, Miller is a ticking time bomb of violence – violence of the sort that he himself has

12  described in detail. As he contemplates his desire to, in his words, "finish what Hitler

13  started," Miller should remain in custody.

14      **C. The nature and seriousness of the danger to any person or the community that would be posed by defendant's release**

15

16      Miller's intended actions, that he detailed in his repeated threats, are not abstract,

17  especially at a time of unprecedented violence towards public servants and their families. At

18  the detention hearing, the government raised an example of a shooter who severely injured

19  Congresswoman Gabby Giffords and murdered U.S. District Judge John Roll, among

20  additional innocent people in Tucson, Arizona. But there are significant, and far more recent

21  examples: including the savage attack on Former Speaker of the House Nancy Pelosi's

22  husband that left him with a fractured skull at the hands of his hammer-wielding attacker. If

23

24  ---

[6] Although Miller points to an example of an eBay millionaire, Miller admitted that he supports himself through his father's life insurance as the eBay market declined in recent years. Pretrial Services Report at 2.

released, Miller has told his victims exactly what he intends to do – he stated his desire to victimize U.S. Senator 1 and her family and the family of U.S. Senator 2. The government respectfully submits that his intentions should be taken seriously, and he should remain in custody.

## IV.    Conclusion

For the reasons previously stated, John Anthony Miller is both a flight risk and a danger to the community; no condition or combination of conditions will reasonably assure his appearance and the safety of the community.

DATED: November 28, 2023

JASON M. FRIERSON
United States Attorney
District of Nevada


*/s/ Jacob Operskalski*
JACOB OPERSKALSKI
Assistant United States Attorney

9