JESS R. MARCHESE, ESQ.
Nevada Bar # 8175
601 N. Rancho Drive, B-14
Las Vegas, NV 89106
(702) 385-5377 (P) (702) 960-4084 (F)
marcheselaw@msn.com
Attorney for Defendant **John Miller**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| UNITED STATES OF AMERICA, | Case No. 2:23-CR-00221-JAD-DJA-1 |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANT'S SENTENCING MEMORANDUM** |
| JOHN MILLER, | |
| Defendant. | |

**Certificate of Timely Filing: This memorandum is timely filed.**

    COMES NOW, the Defendant, JOHN MILLER ("Defendant" or "Mr. Miller"), by and through his attorney of record, JESS R. MARCHESE, ESQ., and respectfully submits this Sentencing Memorandum, urging this Court to sentence him to credit for time served.

    DATED this 6th day of April, 2025.

                                                /s/ Jess R. Marchese, Esq.
                                                JESS R. MARCHESE, ESQ.
                                                Attorney for Defendant **John Miller**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     Procedural Background

Mr. Miller was arrested on October 26, 2023 and has been in continuous custody since that date (PSR p. 2). On November 21, 2023 a three count Criminal Indictment was filed against Mr. Miller charging him with Count 1 – Threatening a Federal Official in violation of 18 U.S.C. 115(a)(1)(B) and Counts 2 and 3 – Influencing, Impeding or Retaliating Against a Federal Official by Threatening a Family Member in violation of 18 U.S.C. 115(a)(1)(A) (ECF No. 25).

Mr. Miller pled guilty to all three counts of the Criminal Indictment, without the benefit of a plea agreement, on December 19, 2024 (ECF No. 75).

The Presentence Report (hereinafter "PSR") finds the total offense level to be 25, Mr. Miller to be a category I criminal history and recommends a downward departure to thirty-six (36) months per count, to run concurrently, followed by a term of three years supervised release (PSR p. 11, 22).

Presently, sentencing is set for April 30, 2025.

## II.     Pertinent Facts

Between October 11, 2023 and October 19, 2023, the office of a United States Senator received numerous calls and voicemails from Mr. Miller (PSR p. 5). On October 18, 2023, Mr. Miller attempted to enter the Lloyd D. George federal courthouse to see the senator but was refused entry (PSR p. 6). Mr. Miller was later reported screaming profanities on Las Vegas Boulevard (PSR p. 6). On October 19 and October 24, 2023, Mr. Miller left additional threatening voicemails on the senator's voicemail, specifically identifying himself

(PSR p. 6). Mr. Miller left similar threatening voicemails on a separate senator's voicemail on October 25, 2023 (PSR p. 6-7).

Prior to Mr. Miller's arrest on October 26, 2023, he contacted 911 dispatch (from the same number which made the threatening calls detailed above) to ask if the police outside his residence were real (PSR p. 7).

### III.    Objections to the Presentence Report

Mr. Miller objects to paragraph twenty, which applies a six-level enhancement under USSG 2A6.1(b)(1) for conduct evidencing an intent to carry out such a threat (PSR p. 8). Generally, the preponderance of evidence standard is the appropriate standard for factual findings used for sentencing. *United States v. Pineda-Doval,* 614 F.3d 1019, 1041 (9th Cir. 2010).

Mr. Miller submits this enhancement is improper given the insufficient evidence in support of his intent to carry out such a threat. In this case, Mr. Miller traveled to the courthouse, was denied entry and left. Mr. Miller vehemently submits he had no true intent to carry out any threat. There is no evidence to suggest Mr. Miller had any ammunition or weapons at any time when he attempted to enter the public building.

A review of federal authority indicates more evidence in support of the purported intent to carry out the threat is necessary. For instance, in *United States v. Kirsh*, 54 F.3d 1062, 1073 (2d Cir. 1995), the Second Circuit concluded the defendants' purchase of guns and attempted purchase of ammunition during time they were sending threatening letters was conduct sufficiently evidencing intent to carry out their threats. In *United States v. Gary*, 18 F.3d 1123, 1128 (4th Cir. 1994) the Court found evidence of intent to carry out the treat sufficient to support enhancement based on defendant's "stalking" victim, repeatedly visiting

3

her apartment and vandalizing her home and car. The Ninth Circuit, in *United States v. Hines*, 26 F.3d 1469, 1474 (9th Cir. 1994) found that in addition to the defendant's statements that he would kill the President, the defendant sent postcards and letters to friends and relatives stating he wanted to kill President and was additionally armed with two large knives when arrested, thereby justifying the six-point enhancement. Further, in *United States v. Barbour*, 70 F.3d 580, 586 (11th Cir. 1995), the Eleventh Circuit, in affirming the enhancement, indicated the defendant's traveling with one hundred rounds of ammunition was telling that he intended to carry out a threat. Lastly, the First Circuit has held the six-point enhancement appropriate for a defendant who orally threatened a postal worker and then brandished a weapon (a screwdriver) evidencing intent to follow-through with the threat. *See United States v. Jimenez-Otero*, 898 F.2d 813 (1st Cir. 1990).

Here, the case authority indicates Mr. Miller's appearance at a public building, being denied entry and subsequently leaving is insufficient to apply the six-point enhancement. This is especially true as there is no evidence in the record Mr. Miller had weapons of any kind on his person at the time he attempted to enter the building. As a result, Mr. Miller requests this Court find the application of the six-point enhancement inappropriate in this case.

### IV.     Sentencing Under *Booker*

In *United States v. Booker*, 543 US 220 (2005), the Supreme Court adopted an approach to the Sentencing Reform Act that made the Sentencing Guidelines advisory. The *Booker* holding requires a sentencing court to consider guideline ranges, but it permits the court to "tailor the sentence in light of other statutory concerns as well, see § 3553". *Id*. at 245.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as

revised by *Booker*, requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the Court to tailor the sentence in light of other statutory concerns as well, see § 3553(a). *Booker*, 125 S. Ct. at 757. Thus, under *Booker*, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary goal in Section 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2. Section 3553(a)(2) states that such purposes are:

>  (a). to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>  (b). to afford adequate deterrence to criminal conduct;
>  (c). to protect the public from further crimes of the defendant; and
>  (d). to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

>  (a). The nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553[a][1]);
>  (b). The kinds of sentences available (§ 3553[a][3]);
>  (c). The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§ 3553[a][6]); and;
>  (d). The need to provide restitution to any victims of the offense. (§3553[a][7]).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation".

Moreover, under 18 U.S.C. § 3661, no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence. This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as not ordinarily relevant to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H1.

The Supreme Court has made clear that the district court must make an "individualized assessment" based on all the 3553(a) factors. *Gall v. United States*, 128 S. Ct. 586 (2007).

## V. **Application of the Statutory Sentencing Factors to the Facts of this Case**

Mr. Miller now requests that the Court consider the following factors in fashioning a sentence of credit for time served, which is "sufficient, but not greater than necessary" to comply with 18 U.S.C. 3553(a).

**A. A sentence of credit for time served is sufficient, but not greater than necessary under 18 U.S.C. 3353.**

Given Mr. Miller's acceptance of responsibility, the distinct facts and circumstances surrounding the offense, his mental health difficulties, his complete lack of criminal history, and his low recidivism risk, he respectfully requests this Court impose a sentence of credit for time served. This case does not define Mr. Miller's overall good character which is better defined by his years of contribution to society as a son, employee, and community member with no prior serious criminal history.

///

**1. Mr. Miller has accepted responsibility**

Mr. Miller has taken full responsibility for his actions in this case in a manner that demonstrates both his respect for the law and his good character (*see e.g.,* PSR, p. 7, 9). In submitting himself to a term of incarceration (without the benefit of a plea agreement), he has demonstrated his acceptance of responsibility and his respect for the law.

Mt. Miller's timely guilty plea, without the benefit of a plea agreement, evidences his acceptance of responsibility in this case, warranting a sentence of credit for time served.

**2. Mr. Miller has no prior criminal history and as a result, has an extremely low risk of recidivism.**

At forty-four (44) years of age, Mr. Miller has no serious criminal history and has led a law- abiding life. Mr. Miller's only criminal conviction is a misdemeanor DUI from nearly fifteen years ago (PSR p.10). As a result, he receives no criminal history points and is a criminal history category I (PSR p. 11).

Although Mr. Miller is in the lowest Criminal History Category (Category I), such categorization fails to distinguish between someone who has no criminal history and someone who has a prior arrest and conviction record that does not have sufficient criminal history points to place him in any of the higher criminal history categories. Mr. Miller submits he is in the former category and should be distinguished as such[1]. Afterall, offenders like Mr. Miller with zero criminal history points have a rate of recidivism half that of offenders with one criminal history point. *See* Ex. A, p. 23 of 38, Exhibit 4 of Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal*

---

[1] Mr. Miller acknowledges he arguably cannot satisfy the criteria of a "zero-point offender" under USSG 4C1.1 given the threats of violence which are the basis of the offense. However, Mr. Miller submits that does not change the fact that statistically, his recidivism rate is extremely low.

*Sentencing Guidelines* (May 2004).

As a forty-four (44) year old male, with a criminal history category of I, Mr. Miller's risk of recidivism is extremely low at 6.9%. *See* Ex. A, p. 28, Exhibit/Chart 9, p. 28 of 38, U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* (2004). A lower rate of recidivism for older inmates is well-established and supports leniency, because it allows the sentencing purposes of deterrence and protection of the public to be satisfied by a lesser term. *See id.* (noting that recidivism rates "decline relatively consistently as age increases"). Similar to findings in its previous studies, the Commission found age and criminal history category to be strongly associated with rearrests. *See* Ex. B, U.S. Sent'g Comm'n, *Recidivism of Federal Offenders Released in 2010*, p. 4-5 (Sept. 2021).

Overall, like Mr. Miller, those in criminal history category I (the least serious) have the lowest rearrest rates.



*See Id.* at p. 5.

Following *Booker*, reduced recidivism was quickly recognized as a ground for leniency in sentencing older defendants given courts' duty to impose sentences that "afford adequate

deterrence," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B), (C). *See, e.g., United States v. Lata*, 415 F.3d 107, 113 (1st Cir. 2005) (age and infirmity may be considered under Section 3553(a), especially if they diminish the risk of re-offending); *United States v. Hamilton*, 2009 WL 995576 *3 (2d Cir. 2009) (unpublished) ("district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); *United States v. Ruiz*, 2006 WL 1311982 at *4 (S.D.N.Y. May 10, 2006) (unpublished) (collecting cases imposing below-Guideline sentences based on reduced recidivism of defendants over 40).

As reiterated within the charts below, a defendant's criminal history category and criminal history points is directly correlated to recidivism rates. *See* U.S. Sent'g Comm'n, *Recidivism of Federal Offenders Released in 2010*, p. 26-27 (2021).




Here, Mr. Miller presents an exceedingly low risk to reoffend and a credit for time served sentence reflects such findings.

**3. A credit for time served sentence promotes adequate deterrence and respect for the law.**

As an individual with no prior criminal history, who has never been in custody for any length of time in his life, the time spent in custody to date (detained since October 26, 2023) is more than sufficient to deter Mr. Miller from further criminal activity.

Courts have recently observed that lengthy prison sentences have diminishing returns; each additional year essentially has less deterrent effect than the preceding year, due to various facts of human psychology, including time preference for the immediate in contrast to the attenuated. *See United States v. Craig*, 703 F.3d 1001, 1004 (7th Cir. 2012) ("every year added to the prospective sentence has a lesser deterrent effect than the preceding year of the sentence because it is added on at the end.").

Likewise, research has shown that shorter prison sentences are just as effective as longer prison sentences – perhaps even more so. *See* Ex C*, Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1 (2006)[2]. "[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." *Id.* at 28-29. The Department of Justice agrees: "Increasing the severity of punishment does little to deter crime." *See* Nat'l Institute of Justice, *Five Things About Deterrence*, available at https://nij.ojp.gov/topics/articles/five-things-about-deterrence.

Thus, increased punishment will not yield an increased deterrent effect to Mr. Miller or others. As a result, a credit for time served sentence is appropriate in this case.

**4. The circumstances of the offense support a credit for time served sentence**

Here, the conduct which comprises the offense was driven by Mr. Miller's mental health conditions and his use of methamphetamine up to (and including the day of) the offenses at issue.

At the time of his arrest, Mr. Miller was regularly using methamphetamine (PSR p.

---

[2] *See* https://scholarship.law.umn.edu/faculty_articles/495.

14). Mr. Miller began using methamphetamine in his early 20s, and during the pandemic he began using daily, his last use being the day of his arrest on the instant case (PSR p. 14). Mr. Miller believes his use of methamphetamine caused him to be irritable, which consequently contributed to the commission of the instant offense. Mr. Miller admitted that he used methamphetamine within the first two months of being at NSDC because he was stressed and anxious; however, he voluntarily transferred into the solitary confinement unit to get away from the illegal substance (PSR p. 14). Mr. Miller views his arrest in this case as "meant to happen" in that it kept him from drugs and alcohol, and he is now sober (PSR p. 15).

### a. The psychological evaluation

A mental health evaluation was ordered on June 3, 2024 and the evaluating clinician was Dr. Haley Wentowski (PSR p. 14). The Forensic Psychological Report (hereinafter "evaluation") is dated August 14, 2024. The evaluation found Mr. Miller suffers from adjustment disorder with mixed anxiety and depressed mood and stimulant use disorder (PSR p. 14; Evaluation p. 3). Dr. Wentowski noted the adjustment disorder diagnosis is given when an individual develops emotional or behavioral symptoms in response to an identifiable stressor(s) occurring within three months of the onset of the stressor and the symptoms must be out of proportion to the severity or intensity of the stressor (Evaluation p. 7). Dr. Wentowski indicated that Mr. Miller described problematic use of methamphetamine prior to his arrest, and this was further reflected through her giving of psychological testing via the MMPI-3 (Evaluation p. 7).

### b. Attribution to the offense

Mr. Miller has a significant substance use disorder, which he admits contributed to the

11

commission of the instant offense conduct. Additionally, defense counsel advised the defendant was under the influence of methamphetamine at the time of the offense (PSR p. 14). Further, according to the psychological examination, Mr. Miller also suffers from adjustment disorder with mixed anxiety and depressed mood disorder. As acknowledged by probation (PSR p. 19-20), undoubtedly Mr. Miller's substance abuse use disorder and mental state caused by his use of methamphetamine contributed to the offenses at hand. For this reason, Mr. Miller respectfully requests this Court take this information into account in fashioning a credit for time served sentence.

## **CONCLUSION**

In this case, a sentence of credit for time served attends to the factors of 18 U.S.C. 3553(a). This sentence provides for an effective deterrent, respect for the law, and punishes Mr. Miller adequately for his serious crime. As such, Mr. Miller respectfully requests this Court impose such a sentence.

DATED this 19th day of March, 2025.

/s/ Jess R. Marchese, Esq.
JESS R. MARCHESE, ESQ.
Attorney for Defendant **John Miller**

## CERIFICATE OF ELECTRONIC SERVICE

I HEREBY CERTIFY that on the 6th day of April, 2025, the undersigned served the forgoing **DEFENDANT'S SENTENCING MEMORANDUM** on all registered parties herein by causing a true copy thereof to be filed with the Clerk of Court using the CM/ECF system, which was served via electronic transmission by the Clerk of Courts pursuant to local order to the persons named below.

JACOB HAILE OPERSKALSKI
DANIEL R. SCHIESS
United States Attorney's Office
District of Nevada
501 Las Vegas Blvd. South, Ste. 1100
Las Vegas, Nevada 89101

/s/ Jess R. Marchese
JESS R. MARCHESE, ESQ.