SIGAL CHATTAH
United States Attorney
District of Nevada
Nevada Bar Number 8264
JACOB H. OPERSKALSKI
Assistant United States Attorney
Nevada Bar Number 14746
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
PHONE: (702) 388-6336
jacob.operskalski@usdoj.gov
*Representing the United States of America*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:23-cr-00221-JAD-DJA |
| Plaintiff, | |
| v. | **Government's Sentencing Memorandum and Response to John Anthony Miller's Memorandum** |
| JOHN ANTHONY MILLER, | |
| Defendant. | |

"[W]e're gonna finish what Hitler started you fucking slut." – John Anthony Miller. John Anthony Miller ("Miller") terrorized his victims as he attempted to influence, impede, intimidate, interfere with, and retaliate against federal officials. The United States hereby responds to Miller's sentencing memorandum and argues for a sentence of 60 months as being sufficient, but not greater than necessary to accomplish the goals of sentencing.

## I.    Factual and Procedural Background

Over the course of approximately two weeks, Miller left a barrage of violent, threatening voicemails at offices for two United States Senators (U.S. Senators 1 and 2).

Miller's words and actions escalated over that short period as he detailed, in vile, dehumanizing language, the precise nature of his violent intentions.

On October 17, 2023, Miller made the following statements in voicemails left for U.S. Senator 1:

- "You just fucking woken up a motherfucking monster, you fucking piece of shit un-human, subhuman, you're vermin, bitch, you are vermin, bitch, and **we're gonna finish what Hitler started you fucking slut**."(emphasis added).

- "You done picked your side bitch and you done chose evil. I don't give a fuck if you were born into it or not, bitch, you are fucking evil, bitch and **we're gonna exterminate you, fuck**." (emphasis added).

ECF No. 75 at 4-5. One day after stating his desire to "finish what Hitler started" and to "exterminate" his victim who he sees as "subhuman" "vermin," Miller appeared at the Lloyd D. George Courthouse (where both United States Senators for the State of Nevada have offices) and stated his intention to see U.S. Senator 1. *See* ECF No. 4 at 4. Miller was refused entry after he refused to fully comply with a Court Security Officer, and Miller proceeded to yell, among other things: "To kill every last Israeli terror-fucking-rist" while walking down Las Vegas Boulevard. *See id.*

Miller was undeterred by his refusal at the courthouse; instead, he escalated further, turning his threats to the families of United States Senators. On October 24, following another violent rant in a voicemail left for U.S. Senator 1, Miller stated: "Why don't you come arrest me then, fuckin bitch, fuckin bitch, your family's not safe no more, bitch. You just put your whole fuckin family in danger, bitch, you better fly them out there to fuckin Israel too." ECF No. 75 at 5.

During the same time period, Miller left a torrent of threatening voicemails with the offices of U.S. Senator 2. Specifically, in the early morning hours of October 25, Miller left

a voicemail threatening the family of U.S. Senator 2. Specifically, Miller left a violent voicemail for United States Senator 2 that ranted about wanting her to live forever "…so you don't have to worry nothing about me, your family on the other hand, and shit, that's another thing, and shit, good luck with that, bitch, you think, you-er-knowhatImean, you're gonna have security for them?" ECF No. 75 at 5.

The FBI later discovered that during the period of time when Miller was violently threatening his victims, he was sending text messages that provided insights into his intentions. The following messages were transcribed by an FBI agent:

- October 17, 2023:
"Sorry
I just know I'm gonna either die or go to prison here pretty soon
I can't stop crying or leaving messages on they voicemails
They gone too far"

- October 23, 2023:
"They didn't arrest me today
Looks like I'm gonna have to step it up tomorrow
I ain't gonna stop MayMay
I hope I make you proud of me"

- October 24, 2023:
"My MayMay
It's hard motherfucking work threatening these pieces of shits war pigs subhuman senators and congresswomen so now I leave messages mentioning their family members now and how much I would LOVE to meet and greet them and lucky for us you posted pictures of them online so we can never forget their faces
If that don't do it MayMay I suppose we'll try something a lil stronger tomorrow
I love you so much and I hope at least you will be proud of me"

On October 25, 2023, Miller was charged by criminal complaint with one count of 18 U.S.C. § 115(a)(1)(B) threatening a federal official, and an arrest warrant was issued. ECF No. 1. On October 27, 2023, an amended criminal complaint was filed against Miller for the same charge. ECF No. 4. On the same date, Miller had his initial appearance on the amended criminal complaint and was detained following a detention hearing. ECF No. 5.

3

On November 21, a Federal Grand Jury returned an indictment charging Miller with one count of threatening a federal official in violation of 18 U.S.C. § 115(a)(1)(B), and two counts of influencing, impeding, or retaliating against a federal official by threatening a family member in violation of 18 U.S.C. § 115(a)(1)(A) for his actions in threatening U.S. Senator 1, the family of U.S. Senator 1, and the family of U.S. Senator 2.

On December 19, 2024, Miller pleaded guilty to all counts of the indictment without a plea agreement.

## II.    Guideline Calculations

The guideline calculations in the presentence investigation report ("PSR") are accurate (with one mathematical error in the final calculation, as explained below). Counts one and two are grouped together because they involve the same senator and her family, and count 3 is separate as it pertains to a different senator. *See* U.S.S.G. § 3D1.2(b). For counts one and two (group one), the base offense level is 12 pursuant to U.S.S.G. § 2A6.1(a). PSR ¶ 19. As discussed in greater detail below, a six-level enhancement applies pursuant to U.S.S.G. § 2A6.1(b)(1) because Miller demonstrated an intent to carry out his threats. Because Miller made more than two threats, a two-point enhancement applies. U.S.S.G. § 2A6.1(b)(2). The victim is a government officer or employee, so another six-point enhancement applies. U.S.S.G. § 3A1.2(a) and (b). The resulting offense level is 26. PSR ¶ 25.

For count three (group two), the base offense level is 12 pursuant to U.S.S.G. § 2A6.1(a). Because Miller made more than two threats, a two-point enhancement applies. U.S.S.G. § 2A6.1(b)(2). The victim was a government officer or employee, so the six-point enhancement applies. U.S.S.G. § 3A1.2(a) and (b). The resulting offense level is 20. PSR ¶ 31.

The highest adjusted offense level pertains to group one with an offense level is 26, so one unit is applied to that group. U.S.S.G. § 3D1.4(a). The adjusted offense level for group two is six levels less serious than the level for group one, so one half-unit is applied to group two. Adding the units together, we get 1.5 units. Pursuant to U.S.S.G. § 3D1.4, one level should be added to the highest adjusted offense level (group one = 26) for a total of 27.

The PSR subtracted three levels for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). PSR ¶¶ 37-38. This should result in a total offense level of 24, not 25. With a total offense level 24 and criminal history category I, the advisory guideline range is 51-63 months' imprisonment.

## III.    Defense objection

Miller objects to the application of a six-point enhancement in paragraph 20 of the PSR for his conduct evidencing an intent to carry out his threats. ECF No. 82 at 3-4. The enhancement is certainly appropriate considering how Miller tried to gain entry into the United States Federal Courthouse where United States Senators have offices soon after he threatened to "exterminate" his victim in an attempt to "finish what Hitler started . . . ." Thankfully, Miller was stopped by a Court Security Officer and thereafter, a supervisory Deputy United States Marshal was there to witness the scene and safeguard the courthouse community. The government intends to present video evidence at the sentencing hearing to demonstrate that even after being denied entry, Miller made yet another violent remark. Miller arrived at the courthouse that day with violence on his mind. Miller did not just wait behind a computer screen or the end of a telephone line with his violent threats, he appeared at a place where he could likely encounter his first victim. The fact that he did not appear to have a weapon on him at the time does nothing to undercut the danger he posed – he clearly

demonstrated an intent to carry out his threats. Miller shared his violent intentions in public and in private; therefore, the government submits that his words should not be dismissed as empty rhetorical posturing.

## IV.   Discussion

Pursuant to 18 U.S.C. § 3553(a), the Court must consider, among other factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense and promote respect for the law; (4) the need to afford adequate deterrence; and (5) the need to avoid unwarranted sentencing disparities. The government highlights the following considerations:

### A.  Seriousness of the offense

We live in a time of unprecedented political violence, where disagreements over policies and politics are too often used to justify violence. The statutes at issue criminalize words – true threats – and these words cause real damage to victims and communities. Even in an atmosphere of ever-increasing violent rhetoric, Miller's disturbing, antisemitic threats shock the conscience. By his own admission, Miller escalated his threats as he committed his offenses – eventually threatening family members of senators. He was intent on carrying out a mission that would leave him either dead or incarcerated.

The sentence imposed in this case should reflect the serious nature of threats made to terrorize victims for carrying out their duties. Threats about killing public servants and their family members are severe and are significant crimes – a sentence of five years will adequately reflect that severity in this case.

### B.  History and characteristics of the defendant

Miller's history is especially troubling considering that his voicemails and text messages indicate that he believes his violent threats are justified and should make someone

6

proud of him. He continued to escalate his threats over a short period of time; and knowing that his actions would result in consequences, he nonetheless persisted. Had Miller not been apprehended, his own words detail what he would have done. At an absolute minimum, he was intent on terrorizing his victims.

Miller remains a danger to this community – even while in custody, he threatened a staff member with harm. *See* PSR ¶ 4. A significant term of imprisonment is appropriate to redirect the dangerous current trajectory of his life.

Because Miller struggles with mental health and addiction issues, his condition should be considered by the Court in fashioning a sentence, including the terms of supervised release. However, absent a significant change, Miller currently poses a significant danger to society, and there is no indication that the danger he poses will decrease any time soon. A sentence of 60 months is appropriate on these facts.

### C. Deterrence

The need for deterrence, both specific and general deterrence, is crucial here. Miller needs to learn that if he threatens public servants and their families, he will face a significant term of imprisonment. Of equal importance, general deterrence is needed for cases involving such violent threats. The sentence imposed should send a message to the community that threatening federal officials and their families will not be tolerated, and will result in lengthy terms of incarceration. A sentence of 60 months should serve this purpose.

### D. Supervised release

The government requests that the Court impose the recommended three-year term of supervised release with the standard and special conditions recommended by the United States Probation Office as the recommended conditions are likely to aid in Miller's

rehabilitation and reentry. To assist in his successful reentry into society, the government requests that the Court impose the mental health condition. To further ensure the safety of the community, the government also requests that Miller be prohibited from contacting his victims and their families, or attending any event at which he would have reason to believe they would be, for the duration of the term of supervision, without advance approval of his supervising probation officer.

Considering that Miller lacks positive activities and influences, the government also recommends that he be required to provide community service hours. By working with others who serve the community, perhaps Miller would learn to focus his energies on positive pursuits and not on violent acts that are intended to terrorize public servants.

## V.    Conclusion

For all the foregoing reasons, a sentence of 60 months, which is near the high end of the advisory guideline range, is sufficient, but no greater than necessary to accomplish the goals of sentencing.

SIGAL CHATTAH
United States Attorney
District of Nevada


*/s/ Jacob Operskalski*
JACOB OPERSKALSKI
Assistant United States Attorney